# Chicago & Alton Railroad Company v. Timothy O'Neil, Administrator of the Estate of Ellen O'Neil.

1. NEGLIGENCE—*What is—Moving Cars.*—A "kicked" car moving along a track at night, without a light upon it, or any one to control its movements, is negligence.

2. SAME—*Cars Moving Without Lights.*—A "switched" car moving along a track is a "running" car within the meaning of an ordinance providing that "every locomotive engine, railroad car, or train of cars, running in the night time, shall have and keep, while so running, a brilliant and conspicuous light on the forward end of such locomotive engine, car, or train of cars."

3. WORDS AND PHRASES—"*Switched Car*" *and* "*Running Car.*"— Under an ordinance providing that every locomotive engine, railroad car, or train of cars, running in the night time, shall have and keep, while so running, a brilliant and conspicuous light on the forward end of such locomotive engine, car or train of cars, a "switched" car moving on a track is a "running car."

4. SAME—"*Forward End of a Car.*"—The forward end of a car moving along a track is that end which is presented to a person approaching in a direction opposite to the line of movement of the car.

5. ERROR—*Will Not Always Reverse.*—An unimportant error will not be sufficient to reverse a judgment where the right to recover is clear.

**Trespass on the Case.**—Death resulting from negligence. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 11, 1896.

### STATEMENT OF THE CASE.

This is an action on the case for injury resulting in the death of Ellen O'Neil, plaintiff's intestate, on the 19th of January, 1892.

The deceased, while walking south near one of the side tracks of the Union Stock Yards and Transit Company, at a point about twenty feet south of 43d street, was struck by a car and received the injuries from which she died.

The acts of negligence alleged are as follows:

1. The method of switching employed, namely, loosing the cars from the locomotive, and allowing them so to run by their own momentum.

2. Permitting the door of the car, which struck the deceased, to swing open.

3. Failure to have a man upon the car to regulate and control it.

4. Non-compliance with the ordinance of the city of Chicago, requiring every locomotive or train of cars, which should be backing in the night time, to have a conspicuous light upon the rear car to show the direction in which such car was moving.

5. Excessive speed of train.

Some of the counts allege that the place of the accident was upon the " continuation of Loomis street in the city of Chicago, said place being a public place." Other counts aver that the defendant had invited the public to the place of the accident. Others allege that it had been customary for a long time before the accident for hundreds of employes of the various business houses in that vicinity to pass upon and along the tracks, going to and returning from their work to their homes, and that the defendant company knew that many persons were passing upon and along such tracks at the time and place of the accident.

The general direction of the tracks of the Union Stock Yards and Transit Company at the place of the accident is north and south. Forty-third street, running east and west, crosses the tracks. Just north of 43d street and west of the tracks is one of the buildings used by Nelson Morris & Company, and south of such street and west of the tracks is what is known as the Nelson Morris beef house. East of this last building and adjoining it is a platform, along the outer side of which there is a track of the Union Stock Yards and Transit Company. On the night of the accident the deceased left the packing house north of 43d street, by way of the east door, and went out upon 43d street. She then turned south from the north side of 43d street, and had gone beyond the south line of 43d street when the accident happened. The only eye witness to the accident, who testified, was Sarah Corbett, introduced on behalf of the plaintiff. Mrs. Corbett stated that she and the plaintiff

were going down the track in a southerly direction, at about a quarter of six on the 19th of January, 1892; that there were four or five cars north of 43d street on the stock yards tracks, one of which, a refrigerator car, was switched off to the south of 43d street; that as the car which was switched off came down the track, the deceased stepped to the west of the car, and was caught between the door, which was open at the time, and the platform of the beef house; that there was a lady with the deceased, who stepped to the left, or east, of the car at the same time. Mrs. O'Neil, the deceased, walked about twenty feet on the track before she was struck. There was no man upon the car to control it, and there was no light upon the car.

Witness could not say how fast the car was running. Mrs. O'Neil was struck about twenty feet south of 43d street. There was sufficient room between the platform and the track, with a moving car upon it, for a person to walk in safety. Mrs. O'Neil had been employed at the same place for about six months before the accident. Witness had often passed between cars standing upon the track in question and the platform when the door was not open. Cars were frequently switched at that point, and at that time of the night, and she had never noticed any light upon such cars. There was ample room to walk between the tracks without any danger of coming in contact with the train. Deceased could also have walked west to Ashland avenue without any danger. The car stopped just as it struck the deceased, and seems to have been switched only to that point. Witness saw the open door after the car struck deceased. The exact manner of the accident is perhaps best described in the direct examination of this witness, as follows:

"Q. And she (the deceased) stepped off the track as she saw the car coming, did she? A. Yes.

Q. And she stepped off the track to get out of the way of it? A. To the right hand side, yes.

Q. The other woman stepped to the left hand side? A. Yes.

Q. But this door being open she was caught between the door and the platform of the beef house? A. Yes, sir.

Q. That is the way she came to her death? A. Yes, sir."

FRANK O. LOWDEN and ROBERT MATHER, attorneys for appellant.

P. O'NEIL BYRNE and M. E. AMES, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The deceased was killed by a car moving on a track described by one witness as "Nelson Morris beef house track." Appellant contends that the track belonged to the Union Stock Yards Co., upon which track appellant ran its cars by agreement with the Stock Yards Co. Granted that the contention of appellant in this regard is correct, and it does not follow that the deceased was, at the time she was struck, a trespasser. She was employed in the packing house of Nelson Morris. That hundreds of employes were in the daily habit of walking on the tracks at "quitting time," the hour she was injured, is undisputed. The deceased had by acquiescence, if not otherwise, a right to be where she was when injured. There is nothing tending to show that the agreement under which appellant used this track was so exclusive as to debar the Stock Yards Co. from giving to the deceased and other employes of packing houses in that vicinity, permission to walk to and from their homes on or beside these tracks, nor is it shown that the place on which, beside the track, she was standing when struck, was the property in any way of either the appellant or the Stock Yards Co. The evidence is not that the deceased was killed because she was walking upon the tracks, or solely because appellant "kicked" a car along the track without a light upon it or any one to control its movements. Nor was the deceased killed because the car was operated in the same manner that for months previous it had been customary to operate cars

upon this track; for the testimony that the car was run as for months had been usual, can not, in the absence of any direct evidence to that effect, be held to mean more than that so far as sending the car off by itself, with no light and no person thereon was concerned, it was operated in the customary manner.

The deceased was struck and killed by appellant's car because the swinging door thereon was negligently left open; by this door she was struck and killed.

The deceased saw the car coming, and stepped off the track to got out of its way; in the language of Mrs. Corbett:

" Q.   But this door being open, she was caught between the door and the platform of the beef house?   A.   Yes, sir.

Q.   That is the way she came to her death?   A.   Yes, sir."

There was sufficient room between this platform and the moving car for a person to walk in safety, provided a swinging door of the car was not open; with it open, the place was, to one walking beside the track, who thought the car to be an ordinary one with closed doors, a veritable death trap.

At the hour when the deceased was killed, with hundreds of employes of the packing houses going to their homes, to have knowingly " kicked " a car along this track, with no person in control of the same, and with an open door projecting therefrom, would have been willful disregard of the safety of persons walking along the tracks.

We must treat the evidence that for six months previous the same method of switching cars had been employed, as not including the projecting door, as it fairly may be treated, or we must regard the conduct of appellant as amounting to wanton negligence.

It may be, perhaps must be, inferred from the evidence, that the deceased knew that appellant was in the habit of shoving cars along this track, but she also knew that there was between a moving car thereon and the platform of the

beef house, room for her to walk in safety; while there is no evidence that she knew that cars were sent along with swinging doors projecting therefrom.

Complaint is made that appellee was allowed to introduce the following ordinance:

"Every locomotive engine, railroad car or train of cars running in the night time, on any railroad track in said city, shall have and keep, while so running, a brilliant and conspicuous light on the forward end of such locomotive.engine, car or train of cars. If such engine or train be backing, it shall have a conspicuous light in the rear car or engine, so as to show in the direction said car is moving."

It is urged that this does not apply to a single car, and a remark of this court, made in L. S. & M. S. Ry. Co., 33 Ill. App. 145, "that an engine is not a passenger train," is cited. The statement is quite correct, but a railroad car is such a car as was run in the present case. The ordinance does not say that it shall not apply to a disconnected car. It is clear that a "switched" car moving along a track is a "running car," and that the forward end of such car is that which is presented to a person approaching in a direction opposite to the line of movement of the car.

We do not hold that the record here presented is free from error, but we regard the right of appellee to recover as clear, and the damages awarded as not excessive.

The judgment of the Circuit Court is affirmed.